COLUMBUS FINANCE, INC., APPELLANT, *v.* HOWARD ET AL., APPELLEES.

(No. 73AP-187—Decided December 11, 1973.)

*Messrs. Vorys, Sater, Seymour & Pease, Mr. James H. Hedden* and *Mr. Thomas M. Taggart,* of counsel, for appellant.

*Mr. James B. Albers,* for appellees.

WHITESIDE, J. This is an appeal from the Franklin County Municipal Court.

This action was commenced by the plaintiff taking a judgment by confession in the amount of $636.64 for the balance upon two cognovit notes. The petition erroneously listed defendants' address as Constance Drive, but their correct address was Carstare Drive. The notice of the judgment sent by the clerk of courts to defendants was returned and marked "no such street." Plaintiff levied execution upon a 1967 Chevrolet owned by defendants. The levy was executed by a court bailiff accompanied by plaintiff's collection manager. When they arrived at defendants' home to levy execution, Mrs. Howard, one of the defendants, produced what she claimed was a receipt for payment in full of the notes involved. Notwithstanding the production of the

alleged receipt by defendant, of which plaintiff had no record, plaintiff's collection manager insisted upon confiscating and impounding the automobile. The judgment by confession was entered on April 14, 1971; the execution was issued on April 15, 1971; and the levy upon the automobile was made on April 26, 1971.

Thereafter, on May 26, 1971, the defendants filed a motion to vacate the judgment by confession upon the grounds that plaintiff failed to comply with R. C. 2323.13 and that the notes on which the judgment was confessed had been paid. At the same time, defendants filed an answer and a cross-complaint. By the cross-complaint, defendants sought compensatory damages resulting from the alleged wrongful removal of the automobile from their possession, including special damages by virtue of additional transportation and medical costs and, in addition, sought exemplary damages.

The motion to vacate the judgment was sustained, and the levy of execution set aside, and the automobile returned to defendants. Thereafter, the case proceeded to trial before the court without a jury. The trial court entered a judgment for the defendants upon plaintiff's petition, awarded defendants compensatory damages in the amount of $240 for the loss of use of the automobile, awarded compensatory damages to Mrs. Howard in the amount of $760 for mental anguish and public humiliation suffered by reason of the wrongful attachment, and awarded exemplary damages, including attorney fees, in the amount of $2,000, making the total judgment $3,000. Plaintiff appeals and raises two assignments of error as follows:

"1. The trial court erred in failing to direct verdict in favor of appellant at the conclusion of appellees' evidence on that portion of appellees' cross-complaint [counterclaim] relating to punitive damages, attorneys' fees, and damages for mental suffering, anguish and humiliation.

"2. The trial court erred in finding that there was evidence before the court to support an award of punitive damages, attorneys' fees and damages for mental suffering, anguish and humiliation in favor of appellees, and in awarding such damages to appellees."

Plaintiff raises no issue with respect to denying its claim for judgment on the two notes or with respect to the award of the compensatory damages for the loss of use of the automobile. Plaintiff does contend that the trial court erred in awarding compensatory damages to Mrs. Howard for mental suffering, anguish and humiliation, and in awarding exemplary or punitive damages, including attorney fees. Since both assignments of error are interrelated, we will discuss them together.

Plaintiff was the holder of two cognovit notes executed by defendants, one in the amount of $1,058.88, executed in December 1967, and the other in the amount of $116, executed in February 1968, both of which were in connection with the purchase of furniture. Plaintiff retained a security interest in the furniture. By April 1968, defendants were delinquent in making payments on the notes. On April 18, 1968, an employee of plaintiff, Roger Kidd, discovered that the defendants were in the process of moving. Kidd asked Mr. Howard where they were moving and was told they were moving to the north end of Columbus. Kidd observed the defendants load the secured funiture into a truck. Upon instructions of plaintiff's collection manager, Kidd remained in the area and observed that defendants were proceeding in the truck containing the secured furniture towards southern Ohio. When defendants made a stop in Chillicothe, Kidd approached their truck to make further inquiry concerning the move and the future location of the secured furniture. During this encounter, Kidd reminded Mr. Howard that he had lied to him about where he was moving. Mr. Howard became angry and struck Kidd. (Howard admitted giving a fictitious address to Kidd because he felt it was none of his business.) A telephone call was then made to plaintiff's collection manager, and both Kidd and Mr. Howard talked to him. Arrangements were made for the repossession of the secured furniture the following day in Lucasville.

The furniture was repossessed the following day, April 19, 1968, by Kidd accompanied by a Scioto County deputy sheriff (at the request of defendants) and a truck driver. At this time, Kidd signed a receipt for the furniture which

was witnessed by the deputy sheriff and the truck driver. The truck driver signed his name and address along the left side of the receipt, rather than at the bottom. This receipt also contains the words "paid in full" above the signature of Roger Kidd. The word "paid" in part occupies the same space on the receipt as the address of the truck driver. Kidd testified that the words "paid in full" were not on the receipt when he signed it. The Howards testified that it was. Each party presented an expert witness, and the expert presented by plaintiff testified that the words "paid in full" were added after the address of the truck driver, and the expert presented by defendants testified that the words "paid in full" were written before the address of the truck driver. Neither the truck driver, nor the deputy sheriff testified.

It is impossible from an observation of the receipt to ascertain whether the words "paid in full" or the address of the truck driver were first placed upon the receipt. While they occupy the same space, casual observation does not indicate which is over the other. The trial court, in weighing the evidence, chose to believe the evidence offered by defendants that the words "paid in full" were placed on the receipt prior to its being signed by Roger Kidd. In view of the sharp conflict in testimony, including the conflict between the experts' testimony, this court must accept the trial court's finding in this regard.

On August 14, 1968, plaintiffs sent, by certified mail, the required notice of sale of the secured furniture, addressed to Box 108, Lucasville, Ohio. The return receipt was received back by plaintiff postmarked August 16, 1968, in Lucasville, Ohio, signed on behalf of Ronald Howard by Nancy Howard, whom the evidence indicates was Mr. Howard's sister. Although the return receipt indicates that it was requested that the delivery address be indicated, it was not indicated.

Defendants deny ever having received this certified letter and deny any knowledge of the address. However, the Lucasville postmaster testified that the address is the address of Mr. Howard's parents and, also, was the address of defendants, although at sometime, he did not know when,

the defendants' address was changed to Box 33, Lucasville. Defendant's sister testified that the return receipt contained her signature, but could not remember having signed the receipt, having received the letter, or what she did with it. Mr. Howard testified that he sometimes received mail at his parents' home. In any event, the furniture was sold, the proceeds were credited by plaintiff to defendants' ac--count, and this action was commenced only for the unpaid balance.

With respect to punitive damages, including attorney fees, the essential issue involves a determination of what is required to be proved in order to entitle an injured party to punitive damages where his compensatory damages arise from the wrongful attachment of property. The first paragraph of the syllabus of *Smithhisler* v. *Dutter* (1952), 157 Ohio St. 454, states expressly:

"In tort actions, the question of punitive damages may not ordinarily be submitted to a jury in the absence of actual malice."

Thus, ordinarily, proof of only legal malice is not sufficient to justify an award for punitive damages but, rather, actual malice must be proved before punitive or exemplary damages may be awarded. Legal malice and actual malice are not synonymous. *Pickle* v. *Swinehart* (1960), 170 Ohio St. 441. In *Pickle*, the following definition of actual malice was quoted in the opinion, at page 443:

" '* * * Actual or express malice has been defined as that state of mind under which a person's conduct is characterized by hatred or ill will, a spirit of revenge, retaliation, or a determination to vent his feelings upon other persons. * * *' "

Likewise, the opinion in *Pickle* quoted the following definition of legal malice, at 443:

"Legal or implied malice, on the other hand, is that which the law infers from or imputes to certain acts, and has been defined as that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another.' "

Although the trial court made no specific finding that there was either legal malice or actual malice in this case,

the findings of the trial court which were made indicate that if malice were found, it would fall within the definition of legal malice rather than actual malice.

In *Smithhisler, supra,* the following was quoted, at 461, with apparent approval, from the dissenting opinion of Judge Hart in *Saberton* v. *Greenwald* (1946), 146 Ohio St. 414, prefaced by the statement that "there was no division upon this statement":

" 'Not all tort actions are of such a character as to warrant the assessment of punitive damages. Generally the application of the doctrine is confined to cases where there is involved actual malice, interference with marital relations, or wanton personal injury, such as in cases of seduction, assault and battery, false imprisonment, or wrongful expulsion from public passenger vehicles or places of public entertainment.' "

In *Smithhisler,* it was determined that, in an action for alienation of affections, actual malice need not be proved in order to justify an award for punitive damages. In *Gearhart* v. *Angeloff* (1969), 17 Ohio App. 2d 143, cited by defendants, punitive damages were awarded without a showing of actual malice; however, that case involved wanton personal injury.

We have found no case specifically determining whether actual malice is required in order to justify an award for punitive damages in an action for wrongful attachment. However, an action for wrongful attachment is more closely analogous to an action for malicious prosecution than to an action for alienation of affections, or willful and wanton personal injury. With respect to an action for malicious prosecution, although legal malice is sufficient to maintain the action, actual malice is required in order to justify an award for punitive damages. *Pickle, supra; Rogers* v. *Barbera* (1960), 170 Ohio St. 241; *Davis* v. *Tunison* (1959), 168 Ohio St. 471. In *Rogers,* the issue was whether a petition stated a cause of action for malicious prosecution, and the following is stated at page 244 of the opinion:

"The petition herein unquestionably alleges both the termination of the prosecution favorable to the plaintiff and the lack of probable cause. Is the third element, that of

'malice,' properly alleged? If the words, 'acted wantonly * * * and in reckless disregard of the rights of the plaintiff,' can be interpreted as an allegation of 'malice,' that question must be answered in the affirmative.

"The majority of the members of this court are of the opinion that the conduct of a party may be either 'wanton' or 'reckless' and still not have been actuated by malice or ill will. * * *"

We conclude that in order to justify the award of punitive damages in an action for wrongful attachment, actual malice must be proved. The record reveals no evidence which would justify a finding that plaintiff was motivated by actual malice in making what the trial court found to be a wrongful attachment of defendants' automobile.

There remains the issue of whether the trial court erred in awarding compensatory damages for mental suffering, anguish and humiliation. Plaintiff contends that there can be no award for damages for such injuries unless it is accompanied by actual physical injury, citing *Davis* v. *Cleveland Ry. Co.* (1939), 135 Ohio St. 401. Although the opinion questioned the soundness of the rule, the court in *Davis* approved and followed the third paragraph of the syllabus of *Miller* v. *B. & O. S. W. R. R. Co.* (1908), 78 Ohio St. 309, which reads as follows:

"No liability exists for acts of negligence causing mere fright or shock, unaccompanied by contemporaneous physical injury, even though subsequent illness results, where the negligent acts complained of, are neither willful nor malicious."

It will be noted that the syllabus in *Miller* suggests an exception if the acts complained of are willful. Such was the result in *Cincinnati Northern Traction Co.* v. *Rosnagle* (1911), 84 Ohio St. 310, which distinguished the rule of *Miller*, at page 318 of the opinion, stating:

"Such a rule is salutary and necessary in negligence cases. But the reasons for the rule do not apply in cases where the act complained of is not only wrongful but intentional and wilful. * * *"

See also *Housh* v. *Peth* (1956), 165 Ohio St. 35. We conclude, therefore, that damages for mental suffering,

anguish and humiliation may be awarded, even in the absence of physical injury, in cases where the act complained of is not only wrongful but intentional and willful.

The trial court found the attachment of defendants' automobile not only to be wrongful, but to be intentional and willful. The remaining question is whether there was evidence to support that finding. There is no evidence that the use of an incorrect address for defendants in the petition for cognovit judgment was anything other than a negligent error. On the other hand, there can be no question that plaintiff intentionally attempted to collect on the notes and intentionally attached defendants' automobile even though the trial court found that a receipt marked "paid in full" had been given by plaintiff's employee, Kidd. More important, however, is the fact that plaintiff's collection manager insisted upon proceeding with the attachment of the automobile even after Mrs. Howard showed him the receipt signed by Kidd. In light of the trial court's findings with respect to the receipt, the trial court was justified in concluding that the wrongful attachment was intentional and willful. Even if this court were to disagree factually with that finding, we must accept the finding where there is credible evidence to support it.

For the foregoing reasons, both assignments of error are sustained with respect to the award of punitive damages including attorney fees and are overruled with respect to the award of damages for mental suffering, anguish and humiliation. This necessitates a modification of the judgment to delete therefrom the award for punitive damages including attorney fees, leaving the judgment for compensatory damage in the amount of $1,000 intact.

Accordingly, the judgment of the Franklin County Municipal Court is reversed insofar as it awarded $2,000 for punitive damages and attorney fees and is affirmed insofar as it awarded $1,000 as compensatory damages, and this cause is remanded to that court for further proceedings in accordance with law consistent with this decision.

*Judgment reversed in part and affirmed in part.*

TROOP, P. J., and STRAUSBAUGH, J., concur.