DAVID, Appellee and Cross–Appellant,

v.

SCHWARZWALD, ROBINER, WOLF & ROCK CO., L.P.A., et al.; Wolf, Appellant and Cross–Appellee.

[Cite as *David v. Schwarzwald, Robiner, Wolf & Rock Co., L.P.A.* (1992), 79 Ohio App.3d 786.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 60559.

Decided May 26, 1992.

788

*Reminger & Reminger, Alan Parker* and *Margaret Gardner,* for appellee and cross-appellant.

*McNeal, Schick, Archibald & Biro Co., L.P.A.,* and *Paul W. Ziegler,* for appellant and cross-appellee.

———

JOHN F. CORRIGAN, Presiding Judge.

Defendant Marshall J. Wolf appeals from the order of the trial court which entered final judgment for plaintiff Audrey D. David on David's claim for legal malpractice. Plaintiff cross-appeals, challenging various rulings which preceded the entry of final judgment.

I

On May 28, 1987, plaintiff filed this action against defendant, Schwarzwald, Robiner, Wolf & Rock Co., L.P.A. ("SRW & R"), McCarthy, Libit, Crystal & Haiman Co., L.P.A. ("MLC & H") and Irwin S. Haiman, alleging that defendant Wolf disclosed confidential matters which plaintiff revealed to him during a consultation on February 4, 1982, thereby causing her to sustain emotional distress; that defendant Wolf was retained to serve as an expert for plaintiff in her 1985 divorce action, then, acting with the other named defendants, breached his attorney-client relationship and maliciously, recklessly and/or negligently violated his legal and ethical duties to plaintiff; and that defendant Wolf, with defendant Haiman, invaded plaintiff's privacy by acting as co-counsel for plaintiff's husband in the same divorce action.

Prior to trial, defendants Wolf and SRW & R were awarded summary judgment "only as to any and all claims for infliction of emotional distress filed by the plaintiff against these defendants, and * * * only as to plaintiff's causes of action for legal malpractice, fraud, and invasion of privacy against these defendants relating to the February, 1982 communication/disclosure referenced in paragraph 7 of plaintiff's complaint. Remainder of the motion for summary judgment is denied."

Plaintiff then dismissed her claims against Haiman and MLC & H, and on July 10, 1990, the cause proceeded to a jury trial on plaintiff's claims for legal malpractice, and invasion of privacy, and her request for punitive damages.

Plaintiff's key evidence consisted of her testimony, the testimony of defendant upon cross-examination, and the testimony of attorney Robert Zashin.

Defendant testified first and established that from 1982 through January 1988, he was a partner at SRW & R, and that he had no other law practice during this time period. He further testified, with respect to his meeting with

plaintiff in 1982, that attorney Leonard Kleinman referred plaintiff to him, and that he later met with plaintiff and had a general discussion about divorce. He then had no further communication with plaintiff until he received a letter from plaintiff in March 1982 which provided:

"Thank you for consulting with me briefly on a personal matter in early February.

"As you are aware, I am deeply concerned for the welfare and best interests of my husband and children and it is my principal goal to resolve existing conflicts through professional counseling.

"At this time both my husband and I are receiving such counseling.

"For these reasons I have not retained you and do not plan to do so at this time.

"Very truly yours,

"/s/ *Audrey D. David*"

Defendant admitted, however, that Kleinman had never referred any clients to him before or since this incident, and that he had previously indicated, in a prior deposition, that he had no recollection of his discussion with plaintiff.

As to his involvement in plaintiff's divorce action, defendant testified that on April 30, 1986, he unexpectedly ran into attorney Robert Zashin, and Zashin flashed a check and said that he had just gotten a big retainer, and would be needing him in the future to testify. In response, defendant said that they would talk later. Defendant was subsequently invited to be a guest on Zashin's radio show, and the two had a discussion before the show started. According to defendant, however, they did not talk about plaintiff's divorce, or any specific action. Thereafter, in May 1986, Dr. David's attorney Irwin Haiman of MLC & H introduced defendant to Dr. David, and defendant was retained as co-counsel in the divorce proceedings.

Defendant next acknowledged that he had co-authored an article on attorney disqualification which appeared in the winter 1987 edition of Family Advocate, and that this article concerns an attorney's duty to preserve and maintain the secrets of his clients, or information gained in the professional relationship which the client requests to be held in confidence. Defendant further agreed that the attorney-client relationship can sometimes arise by implication, rather than by an express contract, and that it is not always necessary for the attorney to consent to the relationship, nor that a fee be paid.

Defendant denied, however, that he had ever entered into an attorney-client relationship with plaintiff, and claimed that it would be beyond the realm of possibility for Zashin to have retained him. Finally, defendant stated that he

is not an expert on valuing closely held corporations, but he has given seminars which instruct attorneys on law to depose experts who provide such valuations.

Plaintiff testified, with respect to her initial meeting with defendant, that she experienced a major marital crisis in 1982 after seeing letters sent to her husband from various women and after being harassed by her husband and his close friend Kleinman. She then met with defendant, whom she considered a "specialist" in domestic relations law, and discussed intimate details of her marriage, including her husband's paramours, his business, his transmission of venereal diseases, and his threatening her with weapons. She further explained her husband's relationship with Kleinman, as well as her fear of Kleinman, and she informed defendant that the matters which they had discussed must be kept secret. She then offered to pay for the consultation with cash so that her husband would not learn of it.

Later that evening, plaintiff's husband informed her that he was aware that she had met with defendant, and he went into a "tirade." Plaintiff called defendant, and he instructed her to send a letter to him, with a copy to Kleinman, which minimized their prior meeting, and explained that plaintiff had not retained defendant. Plaintiff prepared this letter on March 12, 1982 and sent it to defendant, and also sent a copy to Kleinman.

As to defendant's involvement in her divorce proceedings, plaintiff established that she met with attorney Zashin in July 1985, after learning that her husband had filed for a divorce. At this meeting, Zashin asked her if she would mind if he hired defendant to assist with the discovery of Dr. David's assets and to provide expert testimony on the matter of attorney fees. Plaintiff consented, and later learned that defendant had agreed to work for her in the action.

Plaintiff subsequently discharged Zashin in early 1986. She then rehired him in April 1986 and also retained attorney James Skirbunt as co-counsel. On April 30, 1986, she wrote checks to Skirbunt and Zashin for their retainers, and also wrote a check for $10,000 payable to Zashin's escrow account, which was to be used to pay for expert services and costs.

On June 2, 1986, plaintiff learned that defendant had appeared in the proceedings on behalf of Dr. David, and she became frightened of the consequences. Thereafter, all substantive proceedings were stayed, as Zashin and Skirbunt sought to have defendant disqualified.

Finally, plaintiff established that she expended $12,000 to $13,000 in Skirbunt's fees pertaining to plaintiff's motion to disqualify defendant, and she expended $1,500 to $2,000 on Zashin's fees. While she ultimately agreed to settle her divorce action, plaintiff stated that she believed that defendant's

conduct had compromised her position during negotiations, and she therefore received less than she would have had defendant not been involved. Finally, plaintiff indicated that as a consequence of defendant's action, she was unable to obtain temporary alimony and payment of various bills, had incurred $5,000 in cost of psychological counselling, and was unable to preclude her husband from depleting over $100,000 from one of the parties' accounts.

Zashin's testimony likewise established that he met with plaintiff in July 1985. At this time, plaintiff indicated that he had seen defendant in 1982, and that he dictated a letter which solved difficulties in her marriage for a few years. She recently learned, however, that her husband had filed for divorce and she authorized Zashin to commence proceedings against him. Zashin then suggested that plaintiff retain defendant to assist in discovering the extent of Dr. David's assets because, Zashin testified, defendant is renowned for his ability to do so and has given seminars on this topic. Zashin further suggested that plaintiff retain defendant to serve as an expert on the issue of attorney fees. Plaintiff agreed to both suggestions.

Zashin later ran into defendant unexpectedly and mentioned the retainer to him. According to Zashin, defendant vaguely remembered plaintiff. Later, in December 1985, Zashin called defendant and said that he was in the process of getting the parties' relevant documents together, and defendant indicated that he would be available when Zashin was ready.

On April 30, 1986, Zashin testified as an expert for defendant at a hearing in *Lundie v. Lundie*, case No. D–125330, and showed defendant the check plaintiff had written to his escrow account. Zashin explained that defendant's fees in plaintiff's case were now protected and defendant reportedly indicated that he was ready when needed. The two then discussed Dr. David's considerable assets, as well as Zashin's strategies for handling the case. Thereafter, on May 12, 1986, defendant was to appear as a guest on Zashin's radio show. According to Zashin, defendant arrived early and the two again discussed details of the case including problems with obtaining discovery and Zashin's strategies for handling the matter.

A few weeks later, defendant called Zashin and explained that he had been retained by Dr. David. Zashin begged him to withdraw from the case because he knew all of the facts, as well as Zashin's tactics. Defendant refused, however, stating, "it's tough." Later, in court, Zashin again asked defendant to withdraw from the case and defendant refused, stating, "your client can go to hell."

Zashin next testified that defendant's actions had caused plaintiff to lose $75,000 in temporary alimony, $15,000 in additional attorney fees and $244,000 in permanent alimony and medical reimbursements.

Finally, Zashin established that ninety to ninety-five percent of his practice is in the field of domestic relations, that he has served as both a referee and a trial referee in the domestic relations court, and that he has taught domestic relations law in several different capacities. He then opined that defendant violated well-recognized standards of practice to the detriment of plaintiff.

Plaintiff rested following Zashin's testimony and the trial court subsequently directed a verdict for defendant on plaintiff's claim for invasion of privacy, and her request for punitive damages. The court also dismissed SRW & R from the action.

Wolf provided the sole testimony for the defense and explained that he met with plaintiff in 1982 as an accommodation to Kleinman, and spoke with her briefly about general divorce procedures. He further stated that he had spoken with Zashin about providing some services to one of Zashin's clients. Zashin did not indicate the names of the parties, and never actually retained him. Defendant further claimed that he and Zashin are adversaries, and that plaintiff's claims as to damages were suspicious in light of the fact that she voluntarily settled the divorce action.

The case was then submitted to the jury, and the jury returned a verdict for plaintiff and awarded her $250,000.

## II. Defendant's Appeal

A. "The trial court erred to the prejudice of defendant in admitting expert opinion testimony of Robert Zashin, Esq., on behalf of the plaintiff."

Within his first assignment of error, defendant contends that the admission of Zashin's expert testimony violated Civ.R. 16 and Loc.R. 21 because Zashin was not disclosed as an expert witness prior to trial and Zashin did not prepare a report prior to trial. In addition, plaintiff contends that Zashin's expert testimony failed to meet the requisite degree of certainty. We shall consider each of these claims in turn.

### 1. Notice

Civ.R. 16 provides in relevant part:

"A court may adopt rules concerning pretrial procedure to accomplish the following objectives:

" * * *

"(5) the exchange of reports of expert witnesses expected to be called by each party * * *."

Loc.R. 21.1 provides in relevant part:

"(A) Since Ohio Civil Rule 16 authorizes the court to require counsel to exchange the reports of medical and expert witnesses expected to be called by each party, each counsel shall exchange with all other counsel written reports of medical and expert witnesses expected to testify *in advance of the trial.* * * *

"(B) A party may not call an expert witness to testify unless a written report has been procured from the witness and provided to opposing counsel. * * *

"(C) All experts must submit reports. * * * " (Emphasis added.)

 A trial court has discretion to determine whether a party has complied with Loc.R. 21, and to determine the appropriate sanctions for its transgression. *Pang v. Minch* (1990), 53 Ohio St.3d 186, 194, 559 N.E.2d 1313, 1321. Such determinations will not be reversed on appeal absent an abuse of discretion. *Id.;* accord *Long v. Isakov* (1989), 58 Ohio App.3d 46, 50, 568 N.E.2d 707, 711.

 While the purpose of the rule is to eliminate surprise, *Paugh & Farmer, Inc. v. Menorah Home for Jewish Aged* (1984), 15 Ohio St.3d 44, 45, 15 OBR 142, 143, 472 N.E.2d 704, 705, the existence and effect of prejudice resulting from noncompliance is of primary concern. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 85, 19 OBR 123, 125, 482 N.E.2d 1248, 1250.

 Accordingly, this court will affirm the trial court's denial of a motion *in limine* to bar expert testimony where there is no evidence in the record that the complaining party was actually prejudiced, see *Jackson v. Greater Cleveland Regional Transit Auth.* (Sept. 28, 1989), Cuyahoga App. No. 55965, unreported, 1989 WL 112838, and will reverse the trial court's denial of a motion *in limine* when prejudice is clearly shown. *Christopher v. Cleveland Builders Supply Co.* (Mar. 2, 1989), Cuyahoga App. No. 55069, unreported, 1989 WL 18957.

 In this case, we cannot conclude that the trial court abused its discretion. First, it is clear from the record that in advance of trial, Zashin was not expected to testify, and that his expert opinions were solicited only after the trial court ruled that defendant's admission that the Code of Professional Responsibility governed his conduct could not be admitted as probative of whether defendant's conduct met the requisite standard of care. After this ruling, Zashin promptly tendered his report to defendant and the court gave defendant an opportunity to depose him. Defendant declined this opportunity, however, and did not request a continuance. Second, and most important, the defense of this matter was simply that defendant was never

retained by plaintiff or Zashin and that he therefore owed her no duty of care. Thus, the interpretation and application of the Code of Professional Responsibility was not actually in issue. Accordingly, from the state of the record, there was no abuse of discretion, and defendant has demonstrated no prejudice.

### 2. Certainty

■ Defendant next complains that Zashin's expert testimony did not meet the requisite standard of probability as set forth in *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 369, 28 OBR 429, 430, 504 N.E.2d 44, 46. This claim lacks merit.

In *Shumaker, supra,* the court stated:

"It is well-settled that the establishment of proximate cause through medical expert testimony must be by probability. At a minimum, the trier of fact must be provided with evidence that the injury was more likely than not caused by defendant's negligence.

"See *Cooper v. Sisters of Charity* (1971), 27 Ohio St.2d 242, 252 [56 O.O.2d 146, 151, 272 N.E.2d 97, 103]. Opinions expressed with a lesser degree of certainty must be excluded as speculative.

" 'Proof of possibility is not sufficient to establish a fact; probability is necessary. * * * ' " (Citations omitted.)

As an initial matter, we note that defendant never asserted this objection below.

Moreover, even assuming the objection has been preserved for review, defendant's reliance upon *Shumaker* is misplaced. Zashin's testimony concerned the issue of whether lawyers are required to preserve the confidences and secrets of their clients, and whether they may use the information acquired in the course of their representation to the disadvantage of their client, or for his own purposes without the consent of the client, and these questions do not involve questions of probability. Further, Zashin's testimony as to damages involved facts which Zashin directly observed.

Defendant's first assignment of error is overruled.

B. "The trial court committed prejudicial error in overruling the motions for a directed verdict of defendant-appellant and in overruling the post-trial motions of defendant-appellant for judgment notwithstanding the verdict, or new trial, and for remittitur."

Defendant next asserts that the trial court erred in denying his motion for a directed verdict, and his motion for judgment notwithstanding the verdict or new trial and remittitur because, defendant claims, there was no evidence that

plaintiff and defendant had entered into an attorney-client relationship in 1986, and there was no evidence of damages or proximate cause.

1. Directed Verdict/Judgment Notwithstanding the Verdict

Motions for directed verdicts are governed by Civ.R. 50(A), which provides in relevant part:

"(4) *When granted on the evidence.* When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

Motions for judgment notwithstanding the verdict are governed by Civ.R. 50(B), which provides in relevant part:

"Whether or not a motion to direct a verdict has been made or overruled and not later than fourteen days after entry of judgment, a party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion; or if a verdict was not returned such party, within fourteen days after the jury has been discharged, may move for judgment in accordance with his motion. A motion for a new trial may be joined with this motion * * *."

In *Shore, Shirley & Co. v. Kelley* (1988), 40 Ohio App.3d 10, 13, 531 N.E.2d 333, 337, this court held that the test to be applied in ruling upon these motions is the same:

" 'The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions. *McNees v. Cincinnati Street Ry. Co.* (1949), 152 Ohio St. 269 [40 O.O. 318, 89 N.E.2d 138]; *Ayers v. Woodard* (1957), 166 Ohio St. 138 [1 O.O.2d 377, 140 N.E.2d 401]; Civ.R. 50(A) and (B).' " *Shore, Shirley, supra,* quoting *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 430, 344 N.E.2d 334, 338.

■ Turning next as we must to the elements of a cause of action for legal malpractice, we note that to state a cause of action for legal malpractice a plaintiff must allege: (1) an attorney-client relationship giving rise to a duty;

(2) breach of that duty; and (3) damages proximately caused by the breach. *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 538 N.E.2d 1058, syllabus.

 Defendant claims that the first of these elements was not established because plaintiff's evidence indicated that defendant was approached merely to serve as an expert witness. As an initial matter we note that where a person approaches an attorney with the view of retaining his services, an attorney-client relationship is created. *Taylor v. Sheldon* (1961), 172 Ohio St. 118, 15 O.O.2d 206, 173 N.E.2d 892, paragraph one of the syllabus. In this case, plaintiff's evidence indicated that defendant was approached to assist Zashin on discovering Dr. David's assets, evaluate a professional economist's appraisal of the business, and render an expert opinion regarding Zashin's attorney fees. This evidence, construed most strongly in favor of plaintiff, constitutes substantial evidence upon which reasonable minds may reach different conclusions regarding whether plaintiff retained defendant, through Zashin, to act as her attorney and not simply as a witness.

 Defendant further claims that there was no evidence of damages or proximate causation because plaintiff and Dr. David ultimately entered into a settlement agreement. As we noted previously, however, plaintiff presented evidence, upon which reasonable minds could disagree, that defendant's conduct compromised her ability to negotiate fully, and thereby caused her to forfeit temporary alimony, permanent alimony, and medical payments and also caused her to incur additional attorney fees.

Accordingly, we conclude that the trial court did not err in denying the motion for a directed verdict, and judgment notwithstanding the verdict.

### 2. New Trial/Remittitur

 Where a trial court determines that the damages awarded are excessive, appearing to have been given under the influence of passion or prejudice, it may order a new trial. Civ.R. 59(A)(4). Alternatively, where a court finds a verdict to be excessive, but not the result of passion or prejudice, it may, with the plaintiff's consent, remit a portion and enter judgment in a lesser amount as an alternative to a new trial. *Slivka v. C.W. Transport, Inc.* (1988), 49 Ohio App.3d 79, 80, 550 N.E.2d 196, 197.

 In this case, we find no evidence of passion or prejudice which may have influenced the verdict, as no incompetent evidence was introduced, and no misconduct occurred. Rather, the verdict was in accord with Zashin's testimony that plaintiff sustained approximately $300,000 in damages, stemming from additional attorney fees, and foregone marital assets.

Defendant's second assignment of error is overruled.

C. "The verdict rendered by the jury was against the manifest weight of the evidence presented at the trial."

In *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276, the Supreme Court held that judgments supported by some competent, credible evidence will not be reversed by a reviewing court as being against the manifest weight of the evidence.

In this case, there was competent, credible evidence going to all elements of plaintiff's cause of action for legal malpractice as she established that she had entered into an attorney-client relationship with defendant in her domestic relations action, that defendant then breached duties inherent to that relationship by subsequently agreeing to act as co-counsel for Dr. David in that same action, and that defendant's conduct proximately caused plaintiff to incur damages.

Defendant's third assignment of error is overruled.

D. "The trial court committed prejudicial error in introducing the son of plaintiff's witness, Robert Zashin, Esq., and employees of Mr. Zashin to the jury immediately before the commencement of cross-examination."

Defendant asserts in an affidavit that the court introduced Zashin's son to the jury. There is no evidence, however, that defense counsel ever objected to this action or asked the court for admonition. Accordingly, we will not consider this assignment of error. *First Fed. S. & L. Assn. of Akron v. Cheton & Rabe* (1989), 57 Ohio App.3d 137, 144, 567 N.E.2d 298, 305.

Defendant's fourth assignment of error is overruled, and the judgment against defendant is affirmed.

### III. Plaintiff's Cross–Appeal

A. "The trial court erred in directing a verdict in favor of defendant-appellant on the issue of punitive damages."

Procedurally, we note that in ruling upon a motion for a directed verdict, the trial court must consider the evidence most strongly in favor of the nonmoving party, and where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. *Shore, Shirley & Co. v. Kelley, supra.*

Substantively, we note that punitive damages may be awarded in civil tort actions which involve ingredients of fraud, malice, or insult. *Detling v. Chockley* (1982), 70 Ohio St.2d 134, 136, 24 O.O.3d 239, 240, 436 N.E.2d 208, 209. To obtain such damages:

"[It must first be determined] that the defendant has acted with malice before determining the amount of punitive damages due to the plaintiff.

*Smithhisler v. Dutter* (1952), 157 Ohio St. 454, 47 O.O. 334, 105 N.E.2d 868, paragraph one of the syllabus; *Pickle v. Swinehart* (1960), 170 Ohio St. 441, 11 O.O.2d 199, 166 N.E.2d 227, paragraph two of the syllabus; *Detling, supra* [70 Ohio St.2d], at 137, 24 O.O.3d at 241, 436 N.E.2d at 210. The necessary element of malice may be based upon evidence showing actual malice or malice by implication, *i.e.,* legal malice. This court has recognized that '[o]ne who has committed an act would scarcely admit that he was malicious about it, and so, necessarily, malice can be inferred from conduct.' *Davis v. Tunison* (1959), 168 Ohio St. 471, 475, 7 O.O.2d 296, 298, 155 N.E.2d 904, 907. Our prior cases have identified two general categories of conduct by which malice may be shown, either actual or by inference. As set forth in the syllabus of *Preston* [*v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174], punitive damages may be awarded upon proof of conduct '(1) * * * characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.' " (Emphasis deleted.) *Digital & Analog Design Corp. v. N. Supply Co.* (1989), 44 Ohio St.3d 36, 43–44, 540 N.E.2d 1358, 1365.

In this case, plaintiff asserts that malice was established because when defendant was made aware of plaintiff's objections to his representation of Dr. David, he stated that it was "tough" and that plaintiff could "go to hell." These remarks, however, when construed in plaintiff's favor, do not establish an acknowledgement from defendant that plaintiff was in fact his client. Accordingly, they do not reveal that defendant maliciously or consciously disregarded his duties to plaintiff.

Therefore, we hold that the trial court correctly withheld the issue of punitive damages from the jury.

B. "The trial court erred in granting defendant's motion for summary judgment as to plaintiff's claim for emotional distress, and the trial court further erred in prohibiting plaintiff from presenting evidence of emotional distress as an element of damage directly caused by the actions of defendant."

### 1. Summary Judgment

To obtain summary judgment, the movant must demonstrate that:

"(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

Where the movant meets this burden, the nonmoving party must, pursuant to Civ.R. 56(E), set forth specific facts which demonstrate that there is a genuine issue for trial, if he is to avoid the entry of summary judgment. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 117, 522 N.E.2d 489, 505.

In this case, defendant moved for summary judgment upon plaintiff's claim for infliction of emotional distress asserting, *inter alia*, that plaintiff had not proffered any evidence of severe or debilitating emotional distress. In response, plaintiff asserted that she had sustained severe emotional distress, but she presented no evidence in support of this assertion. Accordingly, defendant was properly awarded summary judgment on this claim. Cf. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 323–324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274.

### 2. Emotional Injury as an Element of Damages

■ Compensatory damages may be awarded for mental suffering, anguish and humiliation where they are sustained as the result of wrongful, intentional and willful conduct. *Columbus Finance, Inc. v. Howard* (1973), 38 Ohio App.2d 7, 13, 67 O.O.2d 116, 120, 311 N.E.2d 32, 36, affirmed (1975), 42 Ohio St.2d 178, 185, 71 O.O.2d 174, 178, 327 N.E.2d 654, 659.

■ In this case, plaintiff presented evidence that defendant wrongfully, intentionally, and willfully accepted employment with Dr. David after being retained, through Zashin, to represent her. Accordingly, the trial court erred in refusing to admit plaintiff's proffered expert testimony evidence of her mental suffering as an element of the compensatory damages she incurred due to defendant's conduct.

However, we deem this error nonprejudicial, as plaintiff was permitted to testify that she had obtained psychological counselling as the result of defendant's conduct, and there is no evidence that plaintiff was denied recovery for mental suffering as part of the compensatory damages awarded to her.

C. "The trial court erred in prohibiting plaintiff from questioning defendant concerning the Code of Professional Responsibility."

D. "The trial court erred in preventing plaintiff's expert witness from testifying concerning Marshall Wolf's conduct as being a departure from the standard of care."

■ In *Palmer v. Westmeyer* (1988), 48 Ohio App.3d 296, 298, 549 N.E.2d 1202, 1205, the Court of Appeals for Lucas County stated:

"Appellants claim that the trial court erred in holding that violations of the Disciplinary Rules do not constitute malpractice. The court's holding is not erroneous. A complaint of misconduct by an attorney for violation of a Disciplinary Rule subjects the attorney to disciplinary action such as reprimand, suspension or disbarment from the practice of law. Jurisdiction is with the Supreme Court of Ohio. Malpractice is the breach of a duty owed with proximately resulting damages from which recovery can be had in the court which has jurisdiction.

" * * * Appellants claim that appellees violated their duty not to represent conflicting interest without full disclosure to, and permission of, the clients. A breach of this duty would not, in and of itself, constitute malpractice. There must also be damages proximately resulting from any breach."

Thus, the court held that violations of the Disciplinary Rules are not malpractice *per se*. Cf. *Walsh v. David* (Dec. 4, 1986), Cuyahoga App. No. 51319, unreported, 1986 WL 13693 (trial court erred in making specific finding that defendant did not violate DR 7–104[A][1] ).

Further, while the preliminary statement of the ABA Code of Professional Responsibility (1976) indicates that "[t]he Code makes no attempt to prescribe either disciplinary procedure or penalties for violation of a Disciplinary Rule, nor does it undertake to define standards for civil liability of lawyers for professional conduct," see Ross, Violation of the Code of Professional Responsibility as Stating a Cause of Action in Legal Malpractice (1979), 6 Ohio N.L.Rev. 692, 702, the Preface of the Code of Professional Responsibility which governs the attorneys of this state does not contain this statement.

Accordingly, we hold that Zashin should have been permitted to testify regarding defendant's conduct, in relation to the Disciplinary Rules of the Code of Professional Responsibility. However, because the substance of this testimony was in fact admitted through both Zashin's testimony and defendant's testimony and because the jury did render a verdict for plaintiff, we find this error to be harmless.

Plaintiff's third and fourth assignments of error are overruled.

E. "The trial court erred in dismissing the law firm Schwarzwald, Robiner, Wolf and Rock Co., L.P.A."

■ When attorneys incorporate and form a legal professional association and become officers, agents or employees of the association, the association, as with any other corporation, will be liable for the torts of an attorney performed within his or her actual or apparent authority. *Reiner v. Kelley* (1983), 8 Ohio App.3d 390, 393, 8 OBR 504, 508, 457 N.E.2d 946, 951.

In this case, plaintiff's evidence established, from cross-examination of defendant, that defendant was a partner in the law firm of SRW & R from 1982 through the end of 1988, that his practice primarily concerns domestic relations and family law, and that he did no legal work apart from his work with SRW & R. As this evidence, when construed most favorably to plaintiff, is sufficient for reasonable minds to disagree as to whether defendant was within the course and scope of his authority at SRW & R, the trial court erred in dismissing the firm from the action.

Plaintiff's fifth assignment of error is sustained.

The trial court's dismissal of SRW & R from the action is reversed and the cause is remanded for further proceedings on this issue only.

*Judgment reversed*
*and cause remanded.*

BLACKMON and JOHN V. CORRIGAN, JJ., concur.

JOHN V. CORRIGAN, J., retired, of the Eighth Appellate District, sitting by assignment.