ACCELERATED DOCKET JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant Elaine Montali ("Montali") appeals from the judgment of the trial court which granted summary judgment to defendant-appellee, William Day ("Day"), in her action based on legal malpractice and conversion. For the reasons set forth below, we reverse.
 {¶ 2} On February 5, 2001, Montali filed her complaint against Day alleging that Day breached his standard of care under the Disciplinary Rules of the Code of Professional Responsibility, including, DR 9-102(B)(4). Montali also alleged that Day was liable for the tort of conversion for allegedly absconding with funds rightfully belonging to her. The record reveals that Day and Montali entered into an attorney-client relationship wherein Day represented Montali as a creditor in an involuntary bankruptcy proceeding for the collection of monies owed to her by debtor George Csizek.[1]
 {¶ 3} Thereafter, on January 26, 1998, Day and Montali executed a release agreement wherein Day agreed to accept a reduced payment for his attorney fees and expenses in the amount of $3,600, in exchange for Montali's agreement to release all claims against Day regarding his representation of her. In his affidavit, Day states that he agreed to accept a lesser amount than was owed because Montali only recovered $7,175.48 of her $30,000 judgment against Csizek.
 {¶ 4} In a separate action, Jose Hernandez, represented by attorney Robert Weltman ("Weltman"), obtained a judgment against Montali in the amount of $30,000.[2] As a result, on January 7, 1998, Montali entered into an agreement with Hernandez assigning him all of her right, title and interest in the proceeds she would receive in the bankruptcy proceedings of George Csizek.
 {¶ 5} On December 18, 2000, Day received a check from the bankruptcy court payable to "Elaine Montali, c/o William J. Day" in the amount of $7,175.48. In his affidavit, Day contends that his associate attempted to deliver the check to Montali but that she refused to endorse or accept it. However, in her affidavit Montali denies this allegation.
 {¶ 6} Thereafter, Day states that he was contacted by Weltman who informed him of Hernandez's judgment and assignment agreement with Montali. Day states that Weltman informed him that Montali agreed that Day should send the dividend check to Weltman who would then disperse $3,175.48 to Day for payment of his legal fees and then apply the remaining $4,000 to the debt Montali owed Hernandez. On January 3, 2001, Day delivered the check to Weltman. In his affidavit, Weltman states that he confirmed this arrangement with Montali.
 {¶ 7} Contrary to the affidavits of Day and Weltman, Montali claims in her affidavit that she never refused to accept the dividend check and that she insisted that the check be delivered to her immediately. Montali claims that Day's associate visited her in order to obtain her endorsement of the check but when she refused to sign the check over to Day, the associate refused to give her the check. Montali claims that Day conditioned her receipt of any funds from the check upon her endorsement of the check over to him so that he could first pay himself the legal fees.
 {¶ 8} Montali avers that she then contacted the U.S. Bankruptcy Trustee, Alan Treinish, who made telephone calls, with Montali present and on the line, to Day and his associate demanding the check be delivered to Montali immediately. However, Montali never received possession of the check. Instead, the record reflects that Weltman sent a letter dated January 26, 2001, to Day enclosing a check in the amount of $3,175.48 for payment of Day's attorney fees. The letter was copied to Montali and contained a note to her that Weltman had applied the remaining amount of $4,000 to the balance Montali owed to Hernandez. Weltman further informed her that he had credited her with an additional $1,000 toward the balance owed to Hernandez.
 {¶ 9} Montali claims that she did not give either Day or Weltman authority to endorse her name on the check or to otherwise negotiate the check. In fact, Montali claims that she insisted that the check be delivered to her and that she would distribute the money accordingly. Montali denies that she authorized Weltman to pay Day his attorney fees from the check. Upon receipt of the January 26, 2001, letter, Montali contacted Weltman and informed him that he was not authorized to endorse her check or distribute money and demanded that he deliver the check to her. Weltman then informed her that he had already endorsed the check and distributed the funds to Day and Hernandez. Montali claims that Weltman provided her with the $1,000 credit because he was aware that he had acted improperly. We note that Weltman is not a party to this action.
 {¶ 10} On July 17, 2001, Day filed his motion for summary judgment on Montali's legal malpractice and conversion claims arguing that based on the release and assignment agreements he had full authority to deliver the check to Weltman and receive monies therefrom. On August 20, 2001, Montali filed her response in opposition and on September 6, 2001, the trial court granted Day's motion for summary judgment.
 {¶ 11} Montali's sole assignment of error for our review is as follows:
 {¶ 12} THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT WHEN THE SUMMARY JUDGMENT EVIDENCE PRESENTED GENUINE ISSUES OF MATERIAL FACT.
 {¶ 13} We note that this court reviews the lower court's grant of summary judgment de novo in accordance with the standards set forth in Rule 56(C) of the Ohio Rules of Civil Procedure. North Coast Cable v.Hanneman (1994), 98 Ohio App.3d 434, 440, 648 N.E.2d 875. Courts must grant summary judgment with caution. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-359, 604 N.E.2d 138.
 {¶ 14} In order for summary judgment to be properly rendered, it must be determined that:
 {¶ 15} (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from such evidence that reasonable minds can come to but one conclusion and, reviewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to the party.
{¶ 16} Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327,364 N.E.2d 267. See, also, State ex rel. Zimmerman v. Tompkins (1996),75 Ohio St.3d 447, 448, 1996-Ohio-211, 663 N.E.2d 639. The burden of establishing that there is no genuine issue of material fact to be litigated is upon the party moving for summary judgment. Turner v.Turner (1993), 67 Ohio St.3d 337, 340, 1993-Ohio-176, 617 N.E.2d 1123. If the moving party meets this burden, the non-moving party must then produce evidence pursuant to Civ.R. 56 setting forth specific facts which show that there is a genuine triable issue. State ex rel. Zimmerman, supra, 75 Ohio St.3d at 449.
 {¶ 17} I. RELEASE OF CLAIMS
 {¶ 18} Day argues that he executed a valid release agreement with Montali and that in the absence of fraud, duress, overreaching or undue influence, the release bars Montali from bringing her claims of legal malpractice and conversion against him. Montali argues that, by its own terms, the agreement only operates to release Day from certain liabilities arising prior to and including the date of the agreement, January 26, 1998. Montali argues that her claims are not barred as they stem from Day's wrongful acts committed in December, 2000. Montali argues that she did not intend to release Day from any future claims.
 {¶ 19} The release agreement provides as follows:
 {¶ 20} Elaine Montali acknowledges that she and William J. Day entered into a contingent fee agreement with reference to collection of monies owed to Elaine Montali by George Csizek; differences have arisen between said parties, and the parties have agreed to replace the original contingent fee agreement with a flat fee of $3,600.00 payable to William J. Day by Elaine Montali.
 {¶ 21} Now therefore, in consideration of said agreement, Elaine Montali releases and discharges William J. Day, his heirs, executors and administrators from any and all liabilities arising out of any claims she might have against him for his representation of her in the George Csizek collection matter from the beginning of the world to the date of these presents. Elaine Montali acknowledges that William J. Day ceased work on collecting from George Csizek at her direction prior to the concluding of his legal efforts in her behalf.
 {¶ 22} (Emphasis added.)
 {¶ 23} A release is a contract which requires an offer, acceptance and a meeting of the minds in order to be valid. Noroski v. Fallet
(1982), 2 Ohio St.3d 77, 79, 442 N.E.2d 1302. There appears to be no meeting of the minds as to whether the release operated to bar future
claims such as those presented by Montali herein. By its terms, the agreement operates to release only those claims occurring prior to and including the date of execution. As Montali's claims are based upon actions taken by Day after the date of execution, we find that a genuine issue of material fact exists as to whether the release bars Montali's claims herein.
 {¶ 24} Further, DR 6-102(A) provides that "A lawyer shall not attempt to exonerate himself from or limit his liability to his client for his personal malpractice." Accordingly, the Ohio Supreme Court has held that,
 {¶ 25} We do not read this rule so as to prohibit an attorney from ever raising a defense against or attempting to settle a malpractice action. However, this rule places an attorney on notice that when a client has a potential cause of action for malpractice, the attorney and the client are adversaries. Because the attorney-client relationship places the attorney in a position of dominance, courts and professional ethics committees have said that a potential malpractice claim may be settled only if the client consents after full disclosure, the settlement is not unconscionable, inequitable, or unfair, and, most important, the client is advised to seek independent counsel before signing the agreement.
{¶ 26} Disciplinary Counsel v. Clavner (1997), 77 Ohio St.3d 431,432, 1997-Ohio-251, 674 N.E.2d 1369. In Barnes v. Ricotta (2001),142 Ohio App.3d 560, 756 N.E.2d 218, we followed Disciplinary Counsel v.Clavner, and held that summary judgment was inappropriately granted where it was unclear whether a release between the attorney and client contained a meeting of the minds as to whether the client agreed to settle her malpractice claim against the attorney. In the case sub judice, Montali claims that she did not intend to release Day from any bad act committed after the date of the release, in other words, this malpractice action.
 {¶ 27} We believe Day attempted to limit his liability for legal malpractice by requiring that Montali execute this release of all claims. This release did not expressly exclude malpractice actions or otherwise meet the requirements set forth in Clavner. Further, Day failed to advise Montali to seek independent counsel prior to executing the agreement. We find that a genuine issue of material fact exists for trial as to whether the release bars Montali's claim of legal malpractice.
 {¶ 28} II. LEGAL MALPRACTICE
 {¶ 29} Montali argues that a genuine issue of material fact exists as to whether Day breached his standard of care as Montali's attorney. In her complaint, Montali averred that Day breached the standard of care as set forth in the Ohio Code of Professional Responsibility. Montali relies on DR 9-102(B)(4) which provides as follows:
 {¶ 30} A lawyer shall: * * *
 {¶ 31} Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.
 {¶ 32} Day argues that Montali confused the distinction between a disciplinary action and a malpractice claim and is unable to maintain a claim for legal malpractice. In Fred Siegel Co. L.P.A. v. Arter Haden
(1999), 85 Ohio St.3d 171, 1999-Ohio-260, 707 N.E.2d 853, the Ohio Supreme Court stated:
 {¶ 33} The purpose of disciplinary actions is to protect the public interest and to ensure that members of the bar are competent to practice a profession imbued with the public trust. Disciplinary Counsel v. Trumbo (1996), 76 Ohio St.3d 369, 667 N.E.2d 1186. These interests are different from the purposes under-lying tort law, which provides a means of redress to individuals for damages suffered as a result of tortious conduct. Accordingly, violation of the Disciplinary Rules does not, in itself, create a private cause of action. Am. Express Travel Related Serv. Co. v. Mandilakis (1996), 111 Ohio App.3d 160, 675 N.E.2d 1279.
 {¶ 34} In Am. Express Travel, supra, at 164-166, we stated, that "[h]istorically, an attorney's negligence has been measured under the theory of legal malpractice."
 {¶ 35} * * * the Code of Professional Responsibility lists only disciplinary action as a possible sanction for violation of the Disciplinary Rules. `A complaint of misconduct by an attorney for violation of a Disciplinary Rule subjects the attorney to disciplinary action such as reprimand, suspension or disbarment from the practice of law. Jurisdiction is with the Supreme Court of Ohio.' David v. Schwarzwald, Robiner, Wolf Rock (1992), 79 Ohio App.3d 786, 802, 607 N.E.2d 1173 [citing Palmer v. Westmeyer
(1988), 48 Ohio App.3d 296, 298, 549 N.E.2d 1202]. There is no mention of civil liability.
 {¶ 36} It is well established that the violation of a disciplinary rule does not create a private cause of action. Thus, Montali cannot maintain an action against Day for violation of DR 9-102. However, although not artfully composed in her complaint, Montali has stated a cause of action for legal malpractice.
 {¶ 37} The elements of a legal malpractice action are (1) an attorney-client relationship giving rise to a duty, (2) a breach of that duty, and (3) damages proximately caused by the breach. Krahn v. Kinney
(1989), 43 Ohio St.3d 103, 105, 538 N.E.2d 1058. In her complaint, Montali set forth sufficient facts supporting each of the elements of legal malpractice. See Krahn v. Kinney, supra. Montali averred that Day, as her attorney, breached the professional standard of care owed to her and that she suffered damages as a result of this breach.
 {¶ 38} In support of her legal malpractice claim, Montali presented evidence of Day's breach in the form of the affidavit of Mark B. Weisman. Weisman is an attorney who has served on the Akron Bar Association Grievance Committee and served as the chairman of the Investigative Committee. Weisman offered his expert opinion that Day breached his duty of care owed to Montali by the following acts: (1) failing to immediately forward Montali's check to her; (2) insisting that Montali endorse the check to Day as a pre-condition of giving any money from the check to Montali; (3) delivering the check to Weltman; (4) permitting Weltman to sign Montali's name to the check; (5) trading the check to Weltman in return for payment of his legal fees rather than seeking the appropriate remedy through the collection process.[3]
 {¶ 39} Day argues that Montali is unable to maintain a cause of action for legal malpractice because the release agreement terminated the attorney-client relationship.
 {¶ 40} The Ohio Supreme Court has stated that "the question of when an attorney-client relationship for a particular undertaking or transaction has terminated is necessarily one of fact." Omni-Food Fashion, Inc. v. Smith (1988), 38 Ohio St.3d 385, 388, 527 N.E.2d 385. We find that a genuine issue of material fact exists as to whether the attorney-client relationship continued when Day became obligated to deliver the check to Montali upon his receipt of same from the bankruptcy court.
 {¶ 41} III. ASSIGNMENT
 {¶ 42} Day argues that he did not violate DR 9-102 when he turned the check over to Weltman because Montali refused to accept the check and because the assignment agreement between Montali and Hernandez required that he deliver the check to Weltman. This argument seems illogical as Day was not a party to the assignment agreement, nor was there evidence that he represented Montali in the Hernandez matter. Thus, we find there exists a genuine issue of fact as to whether Day could be obligated or required to deliver the check to Weltman.
 {¶ 43} IV. CONVERSION
 {¶ 44} In Tabar v. Charlie's Towing Serv., Inc. (1994),97 Ohio App.3d 423, 427-428, 646 N.E.2d 1132, we set forth the required elements for conversion as follows:
 {¶ 45} Conversion is the wrongful control or exercise of dominion over property belonging to another inconsistent with or in denial of the rights of the owner. Bench Billboard Co. v. Columbus (1989), 63 Ohio App.3d 421, 579 N.E.2d 240; Ohio Tel. Equip. Sales, Inc. v. Hadler Realty Co. (1985), 24 Ohio App.3d 91, 24 Ohio B. Rep. 160, 493 N.E.2d 289. In order to prove the conversion of property, the owner must demonstrate (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner. Id. The measure of damages in a conversion action is the value of the converted property at the time it was converted. Brumm v. McDonald Co. Securities, Inc. (1992), 78 Ohio App.3d 96, 603 N.E.2d 1141.
 {¶ 46} A review of the complaint shows that Montali set forth the required elements of conversion. Montali averred that Day received a check from the bankruptcy court payable to her and that, despite her demands, Day refused to deliver the check to her.
 {¶ 47} It appears that Day negotiated with Weltman for the payment of the legal fees Montali owed to him. It is clear that Day made no attempt to verify Montali's alleged instruction to Weltman that he should deliver the check to Weltman and receive payment from him. In her affidavit, Montali claims that she did not endorse the check and did not give authority to either Day or Weltman to sign her name. Yet the check was negotiated and Day did receive funds from the check in payment of his legal fees. Based on this, we find that a genuine issue of material fact exists as to whether Day acted willfully and with malice.
 {¶ 48} Further, Montali argues that her affidavit conflicts with those of Day and Weltman regarding the deliverance and distribution of the check which presents a genuine issue of material fact. We agree. Where the trial court is required to make an independent judicial examination to determine conflicting issues of law and fact, summary judgment is not appropriate. Heatwall v. Boston Hts. (1990),68 Ohio App.3d 96, 587 N.E.2d 440; Murray v. Murray (1993),89 Ohio App.3d 141, 623 N.E.2d 1236. A genuine issue as to a material fact exists whenever the relevant factual allegations in the pleadings, affidavits, depositions or interrogatories are in conflict. Aglinsky v.Cleveland Builders Supply Co. (1990), 68 Ohio App.3d 810, 815,589 N.E.2d 1365. Issues of credibility of affiants are not issues properly decided or disposed of by a motion for summary judgment.Aglinsky, at 815. See Even v. Krawitz (May 1, 1997), Cuyahoga App. No. 70632.
 {¶ 49} The affidavits of Montali, Day and Weltman clearly conflict as to the authority and instruction regarding the deliverance, negotiability, and distribution of the check. Thus, this matter is not properly disposed of by summary judgment.
 {¶ 50} It does not appear from the evidence that reasonable minds can come to but one conclusion and that the conclusion is against Montali, with the evidence being construed most strongly in Montali's favor. Civ.R. 56(C). We find that Day has failed to meet his burden of setting forth that no genuine issue of material fact exists. Furthermore, we find that Montali has presented specific facts showing that there are genuine issues for trial and has produced evidence upon which she bears the burden of production at trial. Civ.R. 56(E). Because we rule that the trial court did not properly grant Day's motion for summary judgment, Montali's sole assignment of error is sustained.
Reversed.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellants recover of said appellees their costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, P.J., AND ANNE L. KILBANE, J., CONCUR.
[1] Cuyahoga County Common Pleas Court No. 237621.
[2] Cuyahoga County Common Pleas Court No. 296811.
[3] We note that Day filed suit against Montali in the Cleveland Municipal Court Case No. 99 CVI 16747, presumably for payment of his legal fees. The record contains a copy of the Satisfaction of Magistrate's Decision and Judgment provided in consideration for the payment of $3,175.48.