OPINION
Plaintiff-appellant Helen Elizabeth Yaeger, as Executrix of the Estate of her deceased husband Harry G. Yaeger, Jr. ("appellant"), appeals from a jury verdict and judgment entered by the Cuyahoga County Court of Common Pleas in favor of defendants-appellees Ernestine L. Fitch, M.D. and E.L. Fitch, M.D., Inc. ("appellees"). Appellant claims that the trial court abused its discretion by admitting irrelevant and prejudicial evidence and by improperly charging the jury and thereby so prejudicing the jury that a new trial must be ordered. We find no reversible error in the proceedings below and affirm the judgment of the trial court.
The facts giving rise to this appeal are as follows. Appellants decedent, Harry G. Yaeger, Jr. ("decedent"), died on December 29, 1993 of acute myocardial infarction. Eight days prior to his death, on December 21st, decedent complained to his wife that he had flu-like symptoms and that he was tired, achy, weak and had some tightness in his chest. Still experiencing those symptoms, both the next day and the day after, he went to his family practitioner, appellee, on December 23, 1993. During the office visit, a member of appellee's staff recorded decedent's preliminary history noting that he had complaints of "shortness of breath, pain in his arms and back, no cough times one day, and some tightness in his chest on exertion." In order to make a differential diagnosis, appellee examined decedent, asked him questions, listened to his heart and lungs and ordered both an EKG and chest x-ray. Appellee found the EKG reading to be normal. Appellee made the differential diagnosis of pneumonia, ruling out coronary disease because she found "sounds and signs that suggested * * * pneumonia of the right lower lobe" and her conversation with decedent, her examination and the normal outcome of the EKG. Ultimately, the official x-ray report, as interpreted by a radiologist, Dr. Grauel, concluded that decedent had a right lower lobe pneumonia. Upon her diagnosis, appellee prescribed an antibiotic for decedent's pneumonia and advised him, if necessary, to follow up with another physician because she was scheduled to be out of town over the holidays. Decedent took the prescribed medicine and showed signs of improvement until the early morning hours of December 28th when he awakened with severe chest pain accompanied by nausea and profuse sweating. He obtained an appointment at Hassler Medical Center for 9:30 a.m. and, accompanied by his wife, decedent was seen by Hassler Medical Center physicians where a chest x-ray and EKG were taken. The chest x-ray showed no presence of pneumonia. Although the EKG indicated decedent was having a heart attack, he was sent home with an anti-inflammatory drug. Later that day, decedents chest pain intensified and he began vomiting. Decedent notified the Hassler personnel of these symptoms and he was instructed to discontinue the medication. About 10 p.m. on December 28th, appellant and her son found decedent dead in his bed. The autopsy report indicated his cause of death as acute heart attack, a myocardial infarction which occurred within hours prior to his death.
Appellant initiated the within action on September 19, 1994, alleging medical malpractice and wrongful death against Fairview General Hospital, Family Practice Center of Fairview General Hospital, the Hassler Center for Family Medicine (collectively "Hassler"), Martin Frantz, M.D., Michael Saidakis, M.D. and appellees Ernestine Fitch, M.D. and E.L. Fitch, M.D., Inc. ("appellees"). On December 6, 1994, appellant amended her complaint adding Radiologic Interpretations Inc., George Grauel, M.D. and Christine Hudak, M.D. as new party defendants. Subsequently, appellant either settled or dismissed her action against all defendants except appellees. The matter proceeded to jury trial commencing March 18, 1997.
At trial, appellant called appellee Dr. Fitch to testify as if on cross-examination. Appellee identified her office record reflecting decedents information as recorded by the x-ray technician on December 23rd and conceded that the record fails to indicate decedents weight, the fact that he was a smoker, and whether there was a family history of heart disease. She admitted that the record further failed to indicate how long decedent had experienced the tightness in his chest and under what circumstances it started and stopped. The record further failed to indicate any additional information concerning decedent's pain in his arms or back or his shortness of breath. She conceded that on December 23rd, she did not diagnose decedent with arteriosclerotic heart disease. Appellee testified that although there are no notes to the effect, she did perform a physical exam on decedent. While she considered a potential diagnosis of heart disease, after considering the negative EKG and determining positive findings of pneumonia indicated both on the x-ray and in her physical examination, she decided in her judgment that the decedent had pneumonia.
Next, appellant presented video-tape testimony of her two expert witnesses. First, Jay S. Thompson, M.D., a general physician and diagnostic radiologist, testified that upon his review of the two December 23rd chest x-rays taken in Dr. Fitchs office, Dr. Grauel's x-ray report on the December 23rd films, Fairview General Hospitals x-ray report of its x-rays and Dr. Grauel's deposition, he concluded that no evidence of pneumonia existed in the lower right lobe of the lung of Yaeger in either of the films taken by appellee on December 23rd He opined that as long as he can see the blood vessels to the right lower lobe and they are clear, sharp and well defined then he knows that no pneumonia is touching those vessels. Further, he disagreed with Dr. Grauel's interpretation made on January 4, 1994 of the December x-rays, which indicated the presence of pneumonia because Thompson stated that he found "no evidence of pneumonia in the right lower lobe, and all the anatomic structures, both within the lung and in the adjacent structures, are sharp and well-defined." Upon review of the films taken at Fairview General Hospital on December 28th, Dr. Thompson agreed with the interpretation rendered which indicated no evidence appeared to suggest pneumonia. Dr. Thompson admitted that Dr. Grauel is an excellent radiologist and did not render any criticism of the delay encountered in Dr. Grauels interpretation of the December 23rd x-ray due to the holiday.
Bruce Lloyd, M.D., a specialist in cardiology, testified that upon review of Dr. Fitch's office records, the Hassler medical records, the hospital records, the autopsy and coroner's report, the deposition testimony of Dr. Fitch and Dr. Grauel, he concluded that appellee failed to meet the standard of care required of any physician in properly evaluating, taking a history, and performing an adequate physical exam. He stated that appellee's records fell short of a complete history because she failed to further elucidate about the complaints as noted by the technician. He said appellee departed from the required standard of care when she failed to determine whether tightness occurred in decedents chest on walking and failed to note the physical exam performed. He said nothing in the history taken by appellee supports her diagnosis of pneumonia, and, in fact, in his opinion the history "screams out" coronary heart disease. He believed the presumptive diagnosis should have been coronary heart disease, and depending upon a careful history being taken, several different courses of action could have been taken. In his opinion, decedent had unstable angina which, in the absence of treatment may precede a myocardial infarction. He testified that had decedent been given the proper medical diagnosis and treatment on December 23rd he suspected that there would be a 60- 70 percent chance decedent would not have had the myocardial infarction and decedent's life expectancy could have been twenty more years. He further opined that appellee had the first chance on December 23rd to help decedent avoid a myocardial infarction because he was presented with a history indicating coronary heart disease. Dr. Lloyd had opined that had appellee taken a complete history and sent decedent to either a hospital or cardiologist for a cardiac work-up, decedent would not have had the myocardial infarction.
On cross-examination, Dr. Lloyd conceded that although appellee did not document a detailed history and physical examination, he cannot conclude that she did not perform the examination. Moreover, he admitted that the issue of the documentation itself is not what caused decedent's death, but his actual care was. Finally, Dr. Lloyd conceded that the requisite standard of care did not require appellee either to hospitalize decedent nor to order a treadmill test.
Appellant further offered testimony from the family of decedent and from Dr. Rosen, her economic expert, and then rested her case.
The defense called appellee, Dr. Fitch, who testified on her own behalf, stating that she had treated the decedent on two occasions prior to his visit on December 23rd. She said that on December 23, 1993, she talked with decedent, performed a physical exam and ordered both chest x-rays and an EKG. Appellee testified that decedent's complaints were consistent with her diagnosis of pneumonia because he had malaise, was achy, had pains in his chest and arms, and previously had a cough. That morning, however, he had not been coughing. Appellee testified that she knew of no coronary disease in decedent's family and his blood pressure was always normal. While his symptoms could suggest coronary disease, with the EKG assuring her that he was not having a heart attack, she made the diagnosis of pneumonia. She indicated that pneumonia does not always evidence itself with cough and fever. She advised decedent that pneumonia is a serious condition and recommended that he follow up with a physician on his insurance list because of her planned absence over the holidays.
On cross-examination, appellee conceded she did not keep the greatest of records. However, she believed that she met the standard of care required of a physician, which includes taking the history and physical and making notes. She admitted that she was unable to recall decedent's exact answers to her questions during his exam because his responses were not noted in the chart. Upon review of the Hassler record, she agreed that her diagnosis of pneumonia appears three times as the presumptive diagnosis. She conceded that a negative EKG does not mean that decedent did not have coronary artery disease. She said that both processes, pneumonia and coronary artery disease, were present on December
Next, the defense called Dr. Grauel, the radiologist who participated in the chain of treatment of decedent. Dr. Grauel testified by videotape, over appellant's objection, based upon Dr. Grauels failure to provide appellant with an expert report pursuant to Loc.R. 21.1. Dr. Grauel testified that his report, made upon reading decedents x-ray taken December 23rd indicates the presence of a lower right-lobe pneumonia. He agreed with appellee's interpretation that the circled area on decedents x- ray film represents pneumonia. Dr. Grauel further stated that appellee's review of the chest x-ray film complied with the acceptable standard of care.
Finally, the defense presented the expert opinion of Theodore Herwig, M.D., specialist in family medicine, who testified that in his opinion appellee made the appropriate decision on December 23rd regarding decedent and neither her care of decedent, nor her record-keeping, was the proximate cause of decedents death. Dr. Herwig conceded that although appellee's records were terse, they do not indicate her failure to take an adequate history and physical. In his opinion, decedent's symptoms did not "scream out" cardiac disease. He opined that the flu-like symptoms are consistent with a diagnosis of pneumonia even without a fever because both viral and some non-bacterial pneumonia do not have the symptom of fever. He said it is possible to have an x-ray on December 23rd showing pneumonia and, five days later, to have an x-ray with no evidence of pneumonia because pneumonia could be cured or disappear, or the density of the tissue could change so that it is no longer visible. He opined that based upon the history that appellee obtained from decedent, the normal EKG and the chest x-ray that showed pneumonia, it was reasonable for appellee's impression to be that decedents complaints were secondary to the pneumonia. In his opinion, to a reasonable degree of medical certainty, decedent had pneumonia on December 23rd Dr. Herwig identified what he had considered the "soft spots" in appellee's defense. He conceded that Dr. Fitch's records were substandard.
Over objection, Dr. Herwig opined that the physicians at Hassler failed to comply with the standard of care required by family practitioners because they sent decedent home after having an electrocardiogram which clearly showed that decedent was having an acute coronary heart attack.
On cross-examination Dr. Herwig conceded that decedent exhibited five symptoms compatible with coronary artery disease: smoking, overweight, shortness of breath, pain in arms and back, and tightness in his chest. He admitted that he does not know the specific questions asked or information received by appellee from decedent. He identified the "soft spots" in Dr. Fitch's defense to include her very poor records, decedent's history of pain which increased with effort as a red flag of heart disease, and a question of whether the x-ray clearly indicated pneumonia.
The defense rested, closing arguments were made, and jury instructions were given without objection. After deliberating, the jury returned a verdict in favor of appellees finding specifically, by interrogatory, no negligence on the part of appellees. From this verdict, appellant timely appeals and advances five assignments of error for our review.
 I. THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF PLAINTIFF-APPELLANT BY DENYING PLAINTIFFS-APPELLANTS (SIC) MOTION IN LIMINE THEREBY ABROGATING THE LEGAL PRINCIPLE THAT A NEGLIGENT PHYSICIAN WHO SETS IN MOTION A SERIES OF EVENTS IS RESPONSIBLE FOR ANY NEGLIGENCE OF SUBSEQUENT TREATING PHYSICIANS.
 II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ITS INSTRUCTIONS TO THE JURY BY GIVING A CHARGE ON INTERVENING AND SUPERSEDING CAUSE BECAUSE THE EVIDENCE OFFERED AT TRIAL FAILED TO SUPPORT THE PRESENCE OF A BREAK IN THE CAUSAL CONNECTION BETWEEN THE NEGLIGENCE OF DEFENDANT-APPELLEE, ERNESTINE L. FITCH, AND THAT OF ANY SETTLING DEFENDANTS.
 III. THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF PLAINTIFF-APPELLANT IN PERMITTING DEFENSE EXPERTS TO TESTIFY OVER OBJECTION WHEN THE EXPERTS' OPINIONS WERE NOT BASED ON REASONABLE MEDICAL CERTAINTY OR PROBABILITY.
 IV. THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF PLAINTIFF-APPELLANT IN PERMITTING A DEFENSE EXPERT TO TESTIFY OVER OBJECTION WHEN THE EXPERT BASED AN OPINION ON ASSUMPTIONS AND NOT FACTS OR DATA PERCEIVED BY HIM OR ADMITTED IN EVIDENCE AT TRIAL IN VIOLATION OF EVID.R. 703.
 V. THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF PLAINTIFF-APPELLANT BY PERMITTING DEFENDANT-APPELLEE TO OFFER OVER OBJECTION THE OPINION TESTIMONY OF A TREATING PHYSICIAN ON AN ULTIMATE ISSUE WITHOUT FIRST IDENTIFYING THE PHYSICIAN AS AN EXPERT WITNESS AND COMPLYING WITH LOC.R. 21.1 OF THE COURT OF COMMON PLEAS OF CUYAHOGA COUNTY.
In assigned errors one, three, four and five, appellant complains that the trial court abused its discretion in its determination of certain evidentiary rulings causing prejudice to her position. To obtain reversal on appeal of such claimed errors, appellant must show that she was prejudiced by the error committed by the trial court. Evid.R. 103 (A); Civ.R. 61
In her first assignment of error, appellant asserts that the trial court abused its discretion and erred when it denied her motion in limine wherein she sought an order to prohibit appellees from mentioning or presenting evidence of the negligence of the other defendants. Appellees assert that appellant by failing to object to the introduction of this evidence at trial has failed to preserve this error for appeal. Upon a careful review of the record before us, we find sufficient evidence in the record to demonstrate that appellant preserved this error for appeal and we review appellants asserted error on its merits.
In this first assigned error, appellant contends that because the trial court permitted evidence which was both irrelevant and highly prejudicial to be placed before the jury, a new trial should be ordered. We do not agree. Appellant argues that pursuant to the doctrine announced in Travelers Indemnity v.Trowbridge (1975), 41 Ohio St.2d 11, the chain of causation between a physicians negligent act can never be broken by the intervening negligence of subsequent treating physicians. Therefore, appellant contends that all evidence relating to the negligence of the subsequent treating physicians at Hassler was irrelevant and this irrelevant evidence could have led the jury to believe that the negligence of Hassler physicians could erase Dr. Fitch's negligence in contravention of the authority ofTrowbridge.
In Trowbridge, the supreme court determined that "[w]here the negligence of a tortfeasor in causing bodily injury to a person is a proximate cause of further injury or of aggravation of the original injury, caused by the subsequent independent negligence of a physician in treating the original injury, and the original tortfeasor responds in damages to the injured party for such injuries, the original tortfeasor has a right to indemnity from the treating physician as to that portion of the damages due directly to the independent negligence of the physician." Id. at paragraph one of the syllabus. Appellant contends that since the evidence of the subsequent negligence of the physicians at Hassler could not absolve appellee of liability, it was both irrelevant pursuant to Evid.R. 401 and was inadmissible under Evid.R. 402 and 403.
In Motorist Mut. Ins. Co. v. Huron Rd. Hosp. (1995), 73 Ohio St.3d 391, the supreme court overruled the first syallabus ofTrowbridge as follows:
 When a medical provider's negligent treatment of bodily injuries caused by a tortfeasor results in further injury or aggravation of the original injury, R.C. 2307.31 creates a right of contribution between the tortfeasor and the medical provider as to indivisible injuries. (Travelers Indemn. Co. v. Trowbridge [1975], 41 Ohio St.2d 11, 70 O.O.2d 6, 321 N.E.2d 787, paragraph one of the syllabus, overruled.)
Even so, we do not read these cases to require preclusion of evidence of subsequent medical malpractice in a medical malpractice action against the initial treating physician. On the contrary, the Trowbridge doctrine would permit a physician who set into motion the events which caused the subsequent malpractice to indemnification for the portion of damage due directly to the independent negligence of the subsequently treating physician.
Further, pursuant to Motorist Mut., supra, if a physician tortfeasor, here appellee, set into motion events which resulted in a subsequent negligent treatment, then a right of contribution for the indivisible injuries would be created between the tortfeasor and the subsequent negligent medical provider. Therefore, in this case, if appellee had been found negligent and her negligence had been found to be the proximate cause of the further injury caused by the subsequent independent negligence of the Hassler defendants, then, to the extent that she would be required to respond in damages to appellant, she would have the right to contribution for the indivisible damages due to the negligence of the Hassler defendants. Application of this rule simply does not require the court to preclude evidence of the negligence of the subsequently treating physicians. We have carefully reviewed the record before us and the transcript of the trial in the matter. We fail to see how this matter could have been properly tried without the evidence of the subsequent treatment of decedent. A case cannot be tried in a vacuum. Further, we note that appellant's counsel vigorously and skillfully argued appellant's case before the jury. Appellant attempted to prove that appellee's diagnosis and treatment of the decedent was negligent and she set into motion the subsequent malpractice. The jury, after hearing all the evidence, including the testimony of the medical experts, failed to find appellee negligent in her diagnosis and treatment of appellee. Moreover, the record does not lead us to conclude that these jurors were led to believe that the subsequent negligence of the later treating physicians would have absolved appellee of responsibility of her own actions had she been negligent in contravention of the Trowbridge doctrine. As such, we find no error by the trial court in the admission of evidence relating to the negligence of the subsequently treating defendants.
Appellant additionally complains that this evidence was so prejudicial that it may have caused the jury to justify the verdict in favor of appellee by solely blaming the setting defendants. Our review of this record fails to demonstrate such prejudice.
"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected * * *" Evid.R. 103 (A). The trial court is vested with broad discretion in the admission and the exclusion of evidence, and a reviewing court will not reverse a trial courts ruling unless the trial court has clearly abused its discretion to the prejudice of the complaining party. Bostic v. Connor (1988),37 Ohio St.3d 144; Rigby v Lake Cty. (1991), 58 Ohio St.3d 269, 271;Shimola v. Cleveland (1992), 89 Ohio App. 505, 511; Faber v.Sayed (July 7, 1994), Cuyahoga App. No. 65359, unreported. An abuse of discretion requires more than a mere error of law; it requires that the court acted unreasonably, arbitrarily or unconscionably. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217;Huffman v. Hair Surgeon Inc. (1985), 19 Ohio St.3d 83, 87;Shimola, supra. A review of the record before us fails to demonstrate an abuse of discretion in the admission of the evidence of which appellant complains and fails to demonstrate prejudice to appellant due to the admission of this evidence. Accordingly, we find appellants first assignment of error to be without merit.
In her third assignment of error, appellant contends that the trial court abused its discretion in permitting Dr. Grauel and Dr. Herwig to testify as medical experts at trial because: 1) Dr. Grauel failed to base his opinion on reasonable medical certainty when he opined that appellee complied with the applicable standard of care in her interpretation of the December 23rd x- ray, and 2) Dr. Herwig failed to express his opinions to a reasonable degree of medical certainty in deposition testimony prior to trial. In response, appellees assert that Dr. Grauel's testimony was permissible to assist the trier of fact to understand the evidence or, in the alternative, if his testimony is found to be objectionable, its admission was harmless because no allegation was made that appellee's interpretation of the x- ray films was negligent. In addition, appellees assert that Dr. Herwig's opinions were properly rendered at trial to a "reasonable degree of medical certainty."
The admission of expert testimony is a matter within the sound discretion of the trial court. Scott v. Yates (1994), 71 Ohio St.3d 219,221; MacDonald v. Edwards (July 9, 1998), Cuyahoga App. No. 72698 and 72768, unreported. A reviewing court will not reverse the decision of the trial court absent an abuse of discretion. Id. An abuse of discretion occurs when a trial court acts unreasonable, arbitrarily or unconscionably. Rock v. Cabral
(1993), 67 Ohio St.3d 108, 112. Expert opinion is competent and admissible if it is held to a reasonable degree of scientific certainty. State v. Benner (1988), 40 Ohio St.3d 301, 313. The trial court must decide whether the testimony is relevant and whether it will assist the trier of fact to understand the evidence or to determine a fact at issue. Shaffter v. Ward
(1985), 17 Ohio St.3d 79. It has been held generally that treating physicians are ordinary witnesses, not expert witnesses.Covington v. Sawyer (1983), 9 Ohio App.3d 40, 41.
The local rules provide that "in the event the expert witness is a treating physician, the court shall have the discretion to determine whether the hospital and/or office records of that physician's treatment which have been produced satisfy the requirements of a written report." Loc.R. 21(I)(C).
Initially, we find that a careful review of the record demonstrates that Dr. Grauel rendered only a single opinion at trial. This opinion was rendered in response to the question asked whether he believed that "* * * Dr Fitch's review of the chest x-ray complied with the acceptable standard of care." Over objection, Dr. Grauel indicated by affirmative response that in his opinion appellee complied with the acceptable standard of care in the review of the chest x-ray.
Prior to trial, the court concluded in its opinion rendered upon its denial of appellants motion in limine that Dr. Grauel was testifying as a fact witness and not as an expert under the meaning of Loc.R. 21. Appellant claims prejudice because the court permitted Dr. Grauel to testify as to his opinion on this matter where Dr. Grauel was testifying only as a fact witness in this case.
A court is not required to prohibit the witness testimony where there is no evidence appellant was prejudiced by the admission of the testimony. Reese v. Euclid Cleaning Contractors, Inc. (1995).103 Ohio App.3d 141. The determination of whether the testimony results in a surprise at trial is a matter left to the sound discretion of the trial court. Pan; v. Minch (1990), 53 Ohio St.3d 186,194. In the absence of surprise, there is no abuse of discretion. Long v. Isakov (1989), 58 Ohio App.3d 46, 51. "This court has also found that when a complaining party knows the identity of the other party's expert, the subject of his expertise and the general nature of his testimony, a party cannot complain that they are ambushed. Kalina v. Sagen (Mar. 25. 1992), Cuyahoga App. No. 59761, unreported at 14-16." Cherovsky v. St.Lukes Hosp. Off Cleveland (Dec. 14, 1995). Cuyahoga App No. 68326, unreported.
The record reveals the sequence of events as follows. On December 23rd, appellee. a family practitioner, interpreted decedents x-rays and determined that they showed a right lower lobe pneumonia. On January 4th, Dr. Grauel, a radiologist, interpreted the same x-rays and documented his finding of right lower lobe pneumonia in his report at the time of his involvement with the decedents care. Thus, Dr. Grauel's interpretation of the December 23rd x-ray verified the x-ray interpretation made by appellee. Prior to trial, appellant had Dr. Grauel's report and was able to depose Dr. Grauel. Appellant's counsel was afforded the opportunity to prepare for Dr. Grauel's cross-examination. Therefore, it cannot be shown that appellant was either surprised or ambushed by Dr. Grauel's testimony. As a consequence, we do not find that the trial court abused its discretion in allowing Dr. Grauel to render his opinion as to appellee's compliance with the requisite standard of care in her interpretation of the x-ray taken December 23rd even where that opinion was not rendered "to a reasonable degree of medical certainty."
Next, although appellant argues that Dr. Herwig failed before trial to properly render his opinions to a reasonable degree of medical certainty, a careful review of the record before us reveals that at trial Dr. Herwig did render each of his opinions to a "reasonable degree of medical certainty." As such, there can be found no abuse of discretion in permitting his expert testimony at trial.
Accordingly, appellants third assignment of error is without merit.
In her fourth assignment of error, appellant complains that the trial court abused its discretion in permitting Dr. Herwig to testify in violation of Evid.R. 703 and over appellants objection as to his expert opinion because Dr. Herwig's opinion was neither based on facts or data perceived by him nor facts admitted in evidence at trial. Appellees counter that appellant failed to object to any of Dr. Herwig's testimony on the ground that he failed to comply with Evid.R. 703 and, thus, appellant failed to preserve her objection. Appellees further argue that if any error in the admission of this evidence occurred, such error was harmless as appellant has failed to show prejudice.
Evid.R. 703 requires that an expert must base his opinion on "facts or data in the particular case * * * perceived by him or admitted in evidence at the hearing." However, failure to object to the testimony waives the objection on appeal. Stores Realty Co.v. City of Cleveland, Bd. off Bldg. Standards (1975), 41 Ohio St.2d 41.
A careful review of each objection made to Dr. Herwig's testimony as found in the trial transcript fails to show that appellant objected to Dr. Herwig's testimony on the basis of Evid.R. 703. As such, the introduction of this testimony may not now be made grounds for appeal. Accordingly, appellants fourth assignment of error is without merit.
In her fifth assignment of error, appellant asserts that the trial court abused its discretion by permitting Dr. Grauel to testify as an expert at trial although appellee failed to comply with Loc.R. 21.1, which required appellee to furnish Dr. Grauel's expert report to appellant prior to offering testimony. Appellant herein contends that the trial court's decision to deny his motion in limine and to allow the testimony of Dr. Grauel amounted to an abuse of discretion. As stated above, the record demonstrates that Dr. Grauel offered only a single opinion. He opined that appellee met the requisite standard of care in her interpretation of the December 23rd x-ray, wherein she diagnosed decedent with pneumonia. Appellees contend that because Dr. Grauel did not render any opinion with respect to the causation issue in this case and no plaintiff's expert testified that appellee's interpretation of the x-ray was negligent nor that her interpretation of the x-ray films proximately caused Yaeger's death, then the trial courts allowance of this testimony did not amount to an abuse of its discretion. We agree.
Loc.R. 21.1 requires each counsel to exchange written reports of medical and expert witnesses expected to testify in advance of trial. Whether a party has complied with the Loc.R. 21 requirement to produce an expert report is a matter within the discretion of the trial court. David v. Schwartzwald, Bobiner,Wolff Rock Co., L.P.A. (1992), 79 Ohio App.3d 786, 795. Unless the trial court is shown to have abused its discretion, its determination will not be reversed on appeal. Id.
The primary purpose of Loc.R. 21 is to avoid prejudicial surprise resulting from noncompliance with the report requirement. David, id. at 795. The court's discretion must be exercised with a view to implementing the spirit and purpose of Rule 21 — the avoidance of unfair surprise. Bryant v. GreaterCleveland Regional Transit Authority (May 1, 1997), Cuyahoga App. No. 71108. Where there is no showing of prejudice, an appellate court will affirm the denial of a motion in limine based upon failure to comply with Loc.R. 21. Reese v. Euclid CleaningContractors, Inc. (1995), 103 Ohio App.3d 141.
In this case, as stated above, we have determined that appellant has failed to show she was prejudiced by Dr. Grauel's testimony.
Therefore, we find appellants fifth assigned error to be without merit.
Finally, in her second assigned error, appellant asserts that the trial court erred in instructing the jury on "intervening and superseding cause." Appellant contends specifically that 1) theTrowbridge doctrine prohibits the charge, and 2) the evidence failed to support the charge because the "intervening" negligence was not both independent and new. Conversely, appellees argue that 1) appellant waived this asserted error by failing to object to the instruction as required by Civ.R. 51 (A); 2) the instruction was appropriate and mandated by the evidence and failure to give the instruction would have been prejudicial error; and 3) because the jury never reached the issue of "intervening and superseding cause, " any claimed error could not be considered prejudicial.
Under Civ.R. 51 (A), a party may not assign as error on appeal "the giving or the failure to give any instructions unless the party objects before the jury retire to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Consequently, when a party fails to object to the giving of or the failure to give a jury instruction before the jury retires to consider a verdict, a party may not assign as error the giving of or the failure to give such instructions.Schade v. Carnegie Body Co. (1982), 70 Ohio St.2d 207. In addition, the reason for requiring particularity in the objection is to give the trial court the opportunity to correct a mistake before the jury retires. R. H. Macy Co., Inc. v. Otis Elevator
(1990), 51 Ohio St.3d 108, 110. Moreover, the failure to object to an interrogatory constitutes waiver of any error. Boewe v.Ford Motor Co. (1992), 94 Ohio App.3d 270.
A careful review of the record reveals that despite appellant's assertions to the contrary, appellant failed to object to the jury instruction of which she now complains thereby failing to present the opportunity to the trial court to correct any claimed mistake. Accordingly, appellant has failed to preserve this error for our review. Appellants second assigned error is not well taken.
Judgment affirmed.
It is ordered that appellees recover from appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE
BLACKMON, A.J. and
 SPELTACY, J., CONCUR